UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BIOTRACEIT CORPORATION,<br><br>        Plaintiff,<br><br>  v.<br><br>DEBORAH DULLEN and<br>LOS DUD, INC.<br><br>        Defendants. | Civil Action No.: _____<br><br>(DEMAND FOR JURY TRIAL) |

## COMPLAINT

## INTRODUCTION

1. This action seeks to halt a decade-long scheme by Defendant Deborah Dullen ("Dullen"), Plaintiff BioTraceIT Corporation's ("BioTraceIT") former co-founder and CEO, to misappropriate the company's most valuable assets—its patented medical-device technology and trade secrets worth potentially tens of millions of dollars.

2. BioTraceIT a medical-device developer and manufacturer specializing in pain monitoring for animals, through its predecessor, Biographs, LLC, hired Dullen in 2014 specifically to improve and invent potentially patentable technology, and assist in the commercialization of BioTraceIT's intellectual property including the company's pain-monitoring product wearable by pets.

3. Under Dullen's employment agreements requiring disclosure of inventions and granting the company 'all benefits' of her work, Dullen was obligated to provide BioTraceIT with ownership rights to her inventions.

4. Instead, Dullen orchestrated a fraudulent scheme to:

1

      a) Execute unauthorized assignments of BioTraceIT's patents to her shell company Los Dud, Inc.;

      b) Negotiate an invalid 2019 agreement purporting to grant herself ownership of company IP;

      c) Download over 26 GB of trade secrets before her 2025 termination; and

      d) Upon information and belief, establish a competing venture to exploit BioTraceIT's technology and business relationships for her own benefit.

5.    BioTraceIT, therefore, seeks: (a) declaratory judgment confirming its ownership of its pain-monitoring technology covered by U.S. Patent Nos. 11,653,877 (Ex. A), 11,497,438 (Ex. B), 10,376,203 (Ex. C), U.S. Patent Application No. 18/114,375 (Ex. D), provisional patent application No. 62/101,992 (Ex. E), International Patent Application PCT/US2016/12774 (Ex. F), and numerous international patents and applications (collectively, "BioTraceIT's Patents"); (b) voiding fraudulent assignments to Los Dud; (c) permanent injunctive relief to prevent Defendants' use of BioTraceIT's Patents and trade secrets, including technical specifications and customer lists misappropriated by Dullen; (d) disgorgement of Dullen's compensation and other benefits of employment under the "faithless servant" doctrine; and (e) significant monetary damages for misappropriation of BioTraceIT's Patents and trade secrets.

## PARTIES

6.    Plaintiff BioTraceIT Corporation is a New York corporation and medical device developer and manufacturer, with its principal place of business at 366 Veterans

Memorial Highway, Commack, New York 11725. BioTraceIT owns a wholly-owned Canadian subsidiary, BioTraceIT Ltd., with its principal place of business on Prince Edward Island, Canada.

7. Defendant Deborah Dullen is a United States citizen who, upon information and belief, currently resides in Ottawa, Ontario, Canada. Dullen maintains a mailing address at 31 Sapling Drive, Kennett Square, Pennsylvania 19348, as evidenced by her June 2025 communications with the United States Patent and Trademark Office ("USPTO").

8. Defendant Los Dud, Inc. is a Pennsylvania corporation with a registered office at 1518 Walnut Street, Suite 901, Philadelphia, PA 19102. Los Dud is co-owned by Dullen.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1338(a) because this action involves questions of federal patent law, including ownership of BioTraceIT's Patents.

10. This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a) and federal jurisdiction over trade secret claims under the Defend Trade Secrets Act, 18 U.S.C. § 1836.

11. This Court has personal jurisdiction over Dullen because: (a) she owns 50% of Los Dud, a Pennsylvania corporation with its principal place of business in this district; (b) she conducted substantial business from Philadelphia; (c) based on information and belief, she owns residential real property within this district; and (d) she currently uses a Kennett Square, Pennsylvania address for USPTO communications.

communications.

12. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District, including Dullen's work on the inventions underlying BioTraceIT's Patents, the formation and operation of Los Dud, and the fraudulent assignments.

## FACTUAL BACKGROUND

**A. Company Formation and Dullen's Hired-to-Invent Employment (2014-2015)**

13. BioTraceIT develops medical devices for measuring autonomic function and pain levels. In one implementation, BioTraceIT makes a PAINTRACE™ wearable monitor for pets that allows veterinarians and pet owners to comprehend when a pet is experiencing pain.

14. BioTraceIT is the successor-in-interest to Biographs LLC, a Delaware limited liability company formed on June 6, 2006, to develop the monitoring medical device. Biographs was founded by Leonard J. Shore and John Burke, with minority interests held by thirteen other individuals. Following Burke's death in 2010, his interest in the business passed to the Burke Trust, as detailed below.

15. In 2008, Burke assigned U.S. Patent No. 8,560,045 (the "Burke Patent") to Biographs, covering diagnostic medical device technology.

16. In late 2013, Shore received notice that the Burke Patent was going to issue. At that time, Biographs was dormant and Shore was the only Manager of the LLC.

17. In early 2014, Shore met Dullen and offered her an executive position with Biographs LLC, where she was specifically hired to invent and develop new patents and

technologies to advance the company's intellectual property in medical devices and assist in their commercialization.

18. On May 1, 2014, Dullen executed an Employment and Compensation Agreement with Biographs LLC ("2014 Agreement") (Ex. G, 2014 Emp. Agr.) requiring her to:

- a) Devote at least 80% of her time to the company;
- b) Grant the company "all benefits arising from or incident to all work, services and advice" she performed (Section 2(B)); and
- c) Disclose all patentable inventions to the company (Section 6(B)).

19. In mid-2014, while employed by Biographs, Shore and Dullen worked on a patent application based on the monitoring device for measuring autonomic function and pain levels from the Burke Patent, collaborating on ideas they believed were potentially patentable inventions.

20. In November 2014, BioTraceIT Corporation was formed as a New York corporation, and Biographs LLC merged into it, effective January 2, 2015, with all 15 Biographs members exchanging their interests for equivalent BioTraceIT shares.

21. On December 1, 2014, to be effective as of January 1, 2015, Dullen executed an Employment and Compensation Agreement with BioTraceIT Corporation ("2015 Agreement") (Ex. H, 2015 Emp. Agr.), under which she was specifically hired to invent and develop intellectual property related to pain-monitoring technology.

**B. Patent Development Using Company Resources (2014-2015)**

22. Around July 2014, Biographs retained and paid Ms. Claire Zopf, a patent attorney, and her firm Z IP Law PLLC, to prepare and file a provisional patent

application directed to Shore/Dullen's invention.

23. Between July 2014 and late 2014, Dullen and Shore worked together refining ideas and exchanging draft patent applications with Zopf. All legal and filing fees were paid by Biographs and later BioTraceIT—Dullen never hired or paid any sums to Zopf or her firm.

24. On January 10, 2015, Zopf filed a provisional patent application entitled "Method and Apparatus for the Measurement of Autonomic Function for the Diagnosis and Validation of Patient Treatments and Outcomes" naming Shore and Dullen as co-inventors, receiving application No. 62/101,992 (the "Shore-Dullen Application").

25. The Shore-Dullen Application serves as the foundation for BioTraceIT's entire patent portfolio. All subsequent U.S. patents (Nos. 11,653,877, 11,497,438, 10,376,203), patent applications (No. 18/114,375), and international filings claim priority back to the Shore-Dullen Application and contain substantially identical disclosures with variations only in claims tailored for specific jurisdictions.

26. After the Shore-Dullen Application was filed in January 2015, neither Shore nor Dullen conceived any additional inventions for which BioTraceIT sought patent protection.

27. BioTraceIT paid well over $60,000 to Z IP Law, PLLC for all patent filings and related fees around the world, including subsequent applications in Europe, Australia, Brazil, Canada, Chile, China, Hong Kong, India, Israel, Japan, South Korea, Mexico, Nigeria, Philippines, Russia, and Singapore.

**C. The Fraudulent 2015 Assignment to Los Dud**

28. On January 26, 2015, Dullen and Shore formed Los Dud, Inc., a

Pennsylvania corporation, with Dullen claiming it was needed to "shield" patent contents from the public and license IP to BioTraceIT or third parties.

29.  At all times, Los Dud was a "paper Company" and never conducted any business or had any employees, tangible property, bank accounts or debts.

30.  On or about March 12, 2015, Dullen executed unauthorized assignments of BioTraceIT's Burke Patent, and the Shore-Dullen Application — the foundation of BioTraceIT's entire patent portfolio — to her shell company, Los Dud, Inc. (Ex. I, 2015 Los Dud Assignment). This assignment was invalid because:

    a) Dullen had no right to assign company-owned inventions developed using company resources during her employment under hire-to-invent principles;

    b) It lacked consideration to BioTraceIT;

    c) It was executed without corporate authorization from BioTraceIT's board or shareholders;

    d) It violated Dullen's fiduciary duties and hired-to-invent obligations; and

    e) She violated her obligation to provide 'all benefits' to the company in accordance with Section 2 of the 2014 and 2015 Agreements.

31.  Shore, misled by Dullen's misrepresentations about the need to "hide" assets from the public, consented to the assignment, unaware of Dullen's intent to misappropriate BioTraceIT's Patents. As detailed below, Shore's subsequent corrective actions demonstrate his good faith.

**D. Dullen's Pattern of Deceptive Conduct (2016-2019)**

32. On January 10, 2016, Dullen deceived Shore into removing his name from the non-provisional patent application by falsely claiming it was necessary to meet a filing deadline, when in reality this was part of her scheme to assert sole ownership.

33. Throughout patent prosecution, Dullen deliberately used her personal email account to correspond with BioTraceIT's patent counsel, attempting to create the fiction that BioTraceIT's Patents were her personal assets.

34. In 2018, at Dullen's urging, BioTraceIT Ltd. was formed as a wholly-owned Canadian subsidiary of BioTraceIT. Upon information and belief, subsequently Dullen falsely represented to third parties, including Canadian government agencies, that she owned all shares in BioTraceIT-Canada, enabling the receipt of improper financial benefits. During this period she also represented to third parties that she owned the Shore-Dullen patent.

**E. The Invalid 2019 Agreement**

35. In 2019, without formal Board or shareholder review or approval, Dullen crafted an invalid agreement purporting to grant herself ownership of BioTraceIT's intellectual property ("2019 Agreement") (Ex. J, 2019 Agr.) after threatening Shore that she would quit if he didn't execute it.

36. Section 7 of the 2019 Agreement purported to grant Dullen "full ownership and worldwide rights to all IP" generated during her tenure.

37. This provision is invalid and unenforceable under New York Business Corporation Law because:

   a) It constituted a material transaction between the corporation and

       a director requiring non-interested board approval or shareholder ratification, which it did not receive;

b) The transaction was not fair and reasonable to the corporation;

c) Is a clear breach of Dullen's fiduciary responsibility of Board Chair and President to the existing shareholders; and

d) In addition, the Agreement cannot retroactively alter ownership of IP already assigned to the corporation under the hired-to-invent doctrine in accordance with the 2014 and 2015 Agreements.

**F. Dullen's Termination and Escalating Misconduct**

38. In late 2024, Shore discovered that Dullen had falsely claimed full ownership of BioTraceIT-Canada in filings with third parties, including Canadian agencies, despite knowing that no ownership interest was ever transferred to her by BioTraceIT.

39. On February 8, 2025, BioTraceIT's shareholders voted to remove Dullen as a director. On February 10, 2025, the BioTraceIT Board terminated Dullen's employment for cause under the 2019 Agreement, citing 'gross willful misconduct' with a 'material negative impact' on the company, based on her false ownership claims and other fraudulent conduct.

40. Prior to termination, after being informed by Shore of her fraudulent activities, Dullen attempted to download over 26 GB of BioTraceIT's confidential information, including business plans, technical specifications, and trade secrets.

41. Besides the patents, these business records have been considered trade secrets and are key to the development of BioTraceIT's business.

42.     Upon information and belief, Dullen has recently established a company as a vehicle for her competing venture.

43.     In Shore's attempts to resolve the matter without commencing this litigation, Dullen has stated that 'BioTraceIT's IP is only on offer under her terms, which include reinstatement and control of the Board.'

44.     Upon information and belief, Dullen has requested assistance in sending defamatory communications to BioTraceIT's investors and her professional network, falsely claiming she was treated unfairly, and has referenced damage to her professional relationships, including with Dr. Michael Suk, President Elect of the American Medical Association.

45.     Upon information and belief, after termination, Dullen has solicited or intends to solicit BioTraceIT's business contacts for her competing venture, including major medical device companies such as GE Healthcare, Zimmer Biomet, J&J MedTech, Mars Petcare and Abbott Pharma, as well as potential investors.

46.     These business relationships were developed during Dullen's employment with BioTraceIT, which paid for her to attend industry conferences and meetings where she made these contacts using company resources.

47.     Dullen's alleged solicitation of these contacts for her personal competing venture violates her post-employment restrictive covenants and constitutes both tortious interference with BioTraceIT's prospective business relationships and anticipatory breach of her continuing restrictive covenants under her employment agreements.

48.     In June 2025, Dullen filed a 'Power of Attorney with Revocation and Change of Address' with the USPTO attempting to gain control over BioTraceIT's patent

application No. 18/114,375. The USPTO rejected this filing on June 12, 2025, stating that 'the power of attorney in this application is not accepted' because Dullen was not the applicant of record (Ex. L, June 2025 Dullen POA filing and USPTO rejection).

49. Dullen then paid the issue fee for U.S. Patent Application No. 18/114,375, despite never having paid any patent fees during her employment, thereby preventing BioTraceIT from properly responding to the Notice of Allowance and controlling its own patent prosecution.

50. On June 16, 2025, Dullen, through her own counsel, attempted to revoke Zopf's power of attorney over BioTraceIT's patent matters, despite Dullen no longer being an employee or officer of BioTraceIT and having no authority to terminate the company's patent counsel.

51. The revocation letter incorrectly referred to BioTraceIT's Patents as "the Dullen Patents" and directed the transfer of all patent files to Dullen's Pennsylvania address in Kennett Square.

**G. BioTraceIT's Corrective Actions**

52. In 2023, the Burke Patent was reassigned to BioTraceIT, correcting Dullen's fraudulent assignment (2023 Burke-Patent Reassignment).

53. On June 20, 2025, Shore executed an Assignment of Invention on behalf of BioTraceIT, reaffirming the company's ownership of the Shore-Dullen Application and all subsequent patents (Ex. K, 2025, BioTraceIT Assignment). BioTraceIT filed this assignment with the USPTO, and it was recorded on June 24, 2025.

## FIRST CAUSE OF ACTION
### (DECLARATORY JUDGMENT — PATENT OWNERSHIP)

54. BioTraceIT repeats and realleges the aforementioned paragraphs as if fully set forth herein.

55. An actual controversy exists regarding ownership of U.S. Patent Nos. 11,653,877, 11,497,438, 10,376,203, U.S. Patent Application No. 18/114,375, and provisional patent application No. 62/101,992.

56. Under the hired-to-invent doctrine and express contractual obligations, BioTraceIT owns all patents because:

   a) All subsequent patents and applications claim priority to the Shore-Dullen Application conceived of in 2014 during Dullen's employment;

   b) Dullen was specifically employed and paid to develop patent technology;

   c) The 2014 Agreement entitled the company to "all benefits arising from or incident to all work" she performed (Section 2(B));

   d) All legal fees and development costs were paid by BioTraceIT; and

   e) Dullen had no prior knowledge of the technology until employed by the company.

57. The March 12, 2015 assignment to Los Dud is *void ab initio* because:

   a) Dullen had no right to assign company-owned inventions developed using company resources under hire-to-invent principles;

      b) It lacked consideration and corporate authorization;

      c) Violated Dullen's fiduciary responsibility to her Employer and its shareholders; and

      d) It was part of Dullen's fraudulent scheme.

58. The 2019 Agreement's IP ownership clause is invalid under New York corporate law for lack of board approval and did not and cannot retroactively alter ownership of previously assigned IP.

59. BioTraceIT seeks declaratory judgment that BioTraceIT is the sole owner of its IP and that the Los Dud assignment is void and unenforceable.

## SECOND CAUSE OF ACTION
### (BREACH OF FIDUCIARY DUTY [FAITHLESS SERVANT DOCTRINE])

60. BioTraceIT repeats and realleges the aforementioned paragraphs as if fully set forth herein.

61. As director, officer, and co-founder, Dullen owed fiduciary duties of loyalty to BioTraceIT and its 25+ shareholders who invested in the pain-monitoring technology.

62. Dullen's conduct—claiming personal ownership of the Shore-Dullen Application and company's foundational IP, orchestrating fraudulent assignments, claiming ownership of BioTraceIT-Canada and planning a competing venture—constitutes egregious breach of fiduciary duty.

63. Under New York's faithless servant doctrine, Dullen forfeits all compensation during her period of disloyalty, commencing with her first disloyal act.

64. Specifically, BioTraceIT seeks disgorgement of approximately $900,000 in salary and all benefits she received and forfeiture of her BioTraceIT stock under the faithless-servant doctrine.

## THIRD CAUSE OF ACTION
### (FRAUDULENT TRANSFER/FRAUDULENT CONVEYANCE)

65. BioTraceIT repeats and realleges the aforementioned paragraphs as if fully set forth herein.

66. Dullen engaged in fraudulent transfers with actual intent to defraud BioTraceIT by:

    a) Executing unauthorized assignments to Los Dud without consideration;

    b) Using personal emails to create false ownership documentation;

    c) Concealing the fraudulent nature of transfers from shareholders; and

    d) Attempting to misappropriate the Shore-Dullen Application, which underlies BioTraceIT's entire patent portfolio worth tens of millions of dollars.

67. These transfers removed BioTraceIT's most valuable assets—IP potentially worth tens of millions of dollars—causing ambiguity and uncertainty in ownership, greatly harming the opportunity for BioTraceIT to obtain further investment.

68. BioTraceIT seeks avoidance of fraudulent transfers and damages of not less than $2,700,000 under Pennsylvania and New York fraudulent transfer laws.

## FOURTH CAUSE OF ACTION
### (ANTICIPATORY BREACH OF CONTRACT)

69. BioTraceIT repeats and realleges the aforementioned paragraphs as if fully set forth herein.

70. The 2014 and 2015 Agreements contain restrictive covenants prohibiting

14

Dullen from competing for 12 months post-termination and soliciting customers or employees for 1-2 years.

71. Dullen's conduct constitutes anticipatory breach, including:

    a) Refusing to assign patents to BioTraceIT;

    b) Establishing a competing venture using BioTraceIT's Patents (including the Burke Patent), trade secrets, and business relationships;

    c) Downloading trade secrets before termination; and

    d) Explicitly stating intent to exploit BioTraceIT's intellectual property "under her terms".

72. This threatens irreparable harm to BioTraceIT's business and competitive position, for which monetary damages are inadequate.

## FIFTH CAUSE OF ACTION
## (TRADE SECRET MISAPPROPRIATION [DEFEND TRADE SECRETS ACT])

73. BioTraceIT repeats and realleges the aforementioned paragraphs as if fully set forth herein.

74. BioTraceIT owns trade secrets, as part of its broader intellectual property including technical specifications, customer and contact lists (Mars Petcare, Eli Lilly, GE Healthcare), and confidential technical and commercialization business information protected under employment agreement confidentiality provisions.

75. Upon information and belief, Dullen misappropriated BioTraceIT's trade secrets, including technical specifications for the PAINTRACE device and customer lists, which derive independent economic value from not being generally known and are related to products used in, or intended for use in, interstate commerce (18 U.S.C. §

1839(3), § 1836(b)(1)).

76. Upon information and belief, Dullen intends to use these trade secrets in her competing venture, constituting misappropriation under 18 U.S.C. § 1839.

77. BioTraceIT seeks injunctive relief under 18 U.S.C. § 1836 and significant monetary damages, in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (SPECIFIC PERFORMANCE [Against Los Dud])

78. BioTraceIT repeats and realleges the aforementioned paragraphs as if fully set forth herein.

79. If the Court finds any IP was validly transferred to Los Dud, BioTraceIT seeks specific performance compelling assignment back to BioTraceIT, as Los Dud holds no legitimate claim to the IP and paid no consideration for such transfer.

## SEVENTH CAUSE OF ACTION
### (TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS)

80. BioTraceIT repeats and realleges the aforementioned paragraphs as if fully set forth herein.

81. BioTraceIT had prospective business relations with Eli Lilly, GE Healthcare, J&J MedTech, Mars Petcare and Abbott Pharma among others, developed during Dullen's employment using company resources and at company expense.

82. Dullen intentionally interfered by soliciting these contacts for her competing venture using BioTraceIT's misappropriated trade secrets and confidential information, sending defamatory communications falsely claiming unfair treatment, and threatening to damage BioTraceIT's reputation, without privilege or justification and through improper means such as fraud and breach of fiduciary duty.

83. BioTraceIT seeks damages of not less than $10,000,000 for lost economic opportunities and harm to goodwill and injunctive relief.

## EIGHTH CAUSE OF ACTION
## (COMMON LAW UNFAIR COMPETITION UNDER PENNSYLVANIA LAW)

84. BioTraceIT repeats and realleges the aforementioned paragraphs as if fully set forth herein.

85. Dullen and Los Dud engaged in unfair competition by misappropriating BioTraceIT's Patents, trade secrets, and confidential business information to establish a competing venture, falsely representing BioTraceIT's technology as their own to third parties, including investors and industry partners.

86. This willful and deceptive conduct, including Dullen's false claims of intellectual-property ownership (i.e., referring to BioTraceIT's Patents as "the Dullen Patents") and misuse of BioTraceIT's business relationships, caused competitive harm in Pennsylvania, including lost revenues, diminished investment opportunities, and reputational damage.

87. BioTraceIT seeks damages of not less than $10,000,000 for lost market opportunities and goodwill, and injunctive relief to prevent further unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, BioTraceIT respectfully requests:

**A.** Declaratory judgment that BioTraceIT is sole owner of BioTraceIT's Patents, and that the March 12, 2015 assignment to Los Dud is void;

**B.** Preliminary and permanent injunctive relief pursuant to Fed. R. Civ. P. 65 enjoining Defendants from:

    i. Taking any action with respect to BioTraceIT's patent applications;

    ii.    Using or disclosing BioTraceIT's trade secrets; and

    iii.    Violating non-compete and non-solicitation covenants.

**C.** Specific performance compelling Los Dud to assign BioTraceIT's Patents back to BioTraceIT;

**D.** Monetary damages against Dullen for breach of contract and fiduciary duty, tortious interference, and unfair competition;

**E.** Disgorgement of Dullen's compensation since March 13, 2015 ($900,000+) and forfeiture of her BioTraceIT stock under the faithless servant doctrine;

**F.** Declaration that fraudulent transfers to Los Dud are void and order return of transferred assets;

**G.** Reasonable attorneys' fees and costs; and

**H.** Such other relief as the Court deems just and proper.

## JURY DEMAND

BioTraceIT demands a trial by jury for all issues so triable.

Dated: August 1, 2025        **AXENFELD LAW GROUP, LLC**

                                      By:   /s/ Robert R. Axenfeld
                                      Robert R. Axenfeld, Esq.

                                      2001 Market St., Suite 2500
                                      Philadelphia, PA 19103
                                      Telephone: (215) 422-3000
                                      Email: robert@axenfeldlaw.com

                                      *Counsel for Plaintiff BioTraceIT Corp.*