IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BIOTRACEIT CORPORATION,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | **NO. 25-4444** |
| v. | : | |
| | : | |
| **DEBORAH DULLEN,** *et al.* | : | |
| *Defendants.* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                NOVEMBER 5, 2025

# MEMORANDUM OPINION

**INTRODUCTION**

Before this Court is Plaintiff BioTraceIT Corporation's ("Plaintiff" or "BioTraceIT") motion for temporary restraining order ("TRO") and preliminary injunction, filed pursuant to Federal Rule of Civil Procedure ("Rule") 65, against Defendant Deborah Dullen ("Defendant" or "Dullen") and Los Dud, Inc., ("Los Dud") (collectively, "Defendants").[1] (ECF 7). By Order dated August 12, 2025, this Court granted a TRO against Defendants, preventing them from: (1) taking further action related to the various identified patents and patent applications; (2) using, disclosing, or misappropriating BioTraceIT's trade secrets; (3) violating non-competition, non-solicitation, and confidentiality covenants in Dullen's employment agreements; (4) interfering with BioTraceIT's business relationships; and (5) destroying, altering, concealing, or disposing of documents, data, or evidence. (ECF 7). The Order also scheduled a hearing for the preliminary injunction for August 26, 2025. (ECF 8). After granting a requested extension, the hearing on BioTraceIT's motion for the preliminary injunction was held on October 6, 2025. (ECF 36).

---

[1] Los Duds is a corporation that Dullen and Leonard Shore, ("Shore"), formed together. Shore is a third-party defendant to Dullen's crossclaim against BioTraceIT. *See* (ECF 23)

Before this Court is BioTraceIT's request that this Court convert the August 12, 2025 TRO into a preliminary injunction and to set a $5,000 bond. (ECF 30 at pp. 25-26). Dullen opposes the motion. (ECF 26). The issues have been fully briefed and are ripe for disposition.[2] For the reasons set forth herein, the motion for preliminary injunction is granted.

**FACTUAL BACKGROUND**[3]

Based on the relevant facts derived from the pleadings and the testimony and evidence presented at the October 6, 2025 hearing, this Court finds as follows:

*Biographs and Formation of BioTraceIT*

> In 2006, Leonard Shore ("Shore") and John Burke ("Burke") (now deceased) founded Biographs LLC ("Biographs") to develop a medical device that could measure autonomic function and pain levels. (ECF 22 at ¶ 15). Biographs was developing a device named PainTrace and, on October 15, 2013, received patent approval for what was apparently the foundational technology of the device, identified as U.S. Patent No. 8,560,045 (the "Burke Patent"). (ECF 24-1 at pp. 9-46; October 6, 2025 Hearing Transcript ("Tr.") at 63:20-64:2). The Burke Patent listed Burke as the inventor, Richard Gearhart and Biographs as the applicants, and Biographs as the assignee. (ECF 24-1 at p. 9).

---

[2] The Court has also considered Plaintiff's corrected reply. (ECF 30).

[3] Pertinent to this discussion is the following procedural history: Dullen filed a wrongful employment termination complaint against BioTraceIT in the New York Supreme Court for Suffolk County (the "New York Lawsuit"). (ECF 26 at p. 8; October 6, 2025 Hearing Transcript ("Tr.") at 16:20-25). On August 1, 2025, BioTraceIT brought this action against Dullen and Los Dud in this Court. (ECF 1). On August 11, 2025, BioTraceIT filed a motion for a TRO against Defendants, which this Court granted on August 12, 2025. (ECF 7, 8). The TRO was extended by Order dated August 26, 2025. (ECF 18). On September 12, 2025, Dullen filed an answer to BioTraceIT's complaint, a third-party complaint against Shore, a counter-claim action against BioTraceIT and Shore, and a response to Plaintiff's motion for preliminary injunction. (ECF 23-27). On September 21, 2025, BioTraceIT filed a corrected reply in support of its preliminary injunction motion. (ECF 30).

Sometime during the week of September 29, 2025, the parties dismissed their New York lawsuit by stipulation. (Tr. at 17:15-17). On October 6, 2025, this Court heard argument on the preliminary injunction. (ECF 36). At the hearing, Plaintiff called three witnesses—Eugene Fernandez, William Schreiber, and BioTraceIT's patent counsel and employee, Claire Zopf. Dullen also testified on her own behalf. (*Id.*). The TRO was extended pending the Court's decision on the preliminary injunction motion. (ECF 37).

In January 2014, Shore recruited Dullen to work at Biographs. (ECF 7-2 at ¶ 3; ECF 24 at ¶ 34). From emails between Shore and Dullen from January 2014, it appears that Shore, as Biographs' manager, communicated with Dullen about "bring[ing] PainTrace to market." (ECF 24-1 at p. 48-49). On March 24, 2014, Shore sent an offer of employment letter to Dullen for the position of Chief Operating Officer. (ECF 24-1 at pp. 63-65). Dullen accepted and signed the agreement with Biographs effective June 1, 2014 (the "2014 Employment Agreement"). (ECF 22-7).

In late 2014, Biographs was restructured, and a new entity, BioTraceIT, was formed. (ECF 24-2 at pp. 12, 24-25). Dullen, Shore, and Burke's living trust were awarded equal shares of BioTraceIT. Dullen became President of BioTraceIT, and Shore its Vice President. (*Id.*).

***Contested Patents and Applications***

On January 10, 2015, Claire Zopf, ("Zopf"), BioTraceIT's patent counsel, filed U.S. Provisional Patent Application[4] No. 62/101,992, (the "'992 Provisional Application"). This application listed Dullen and Shore as both the inventors and the applicants. (ECF 22-5 at p. 2). The '992 Provisional Application invention was a software application and system and method of data collection and analysis that relied, *in part*, on the PainTrace device to collect pain measurements. (*Id.* at pp. 7, 19). A year later, on January 10, 2016, Zopf filed the non-provisional patent application related to the '992 Provisional Application: U.S. Patent Application No. 14/992,016 (the "'016 Application"). (ECF 22-3 at p. 2). The '016 Application listed Dullen as the sole inventor. (*Id.*). The '016 Application issued on August 13, 2019 as U.S. Patent No. 10,376,203 (the "'203 Patent"). (ECF 22-3 at p. 2).

On January 1, 2016, Zopf filed an International Patent Application, identified as No. PCT/US2016/12774 (the "'774 International Application"), which claimed the benefit of the '992 Provisional Application and listed Dullen as the sole inventor and applicant. (ECF 22-6 at pp. 2-3).

Zopf filed at least three more patent applications listing Dullen as the inventor and applicant and which were associated with the '992 Provisional Application, the '016 Application, and the '203 Patent. On June 30, 2019, Zopf filed U.S. Patent Application Nos. 16/458,129 and 16/458,130. (ECF 22-2 at p. 2; ECF 22-1 at p. 2). From these applications, U.S. Patent Nos. 11,497,438 (the "'438 Patent") and 11,653,877 (the "'877 Patent") were issued on November 15, 2022 and May 23, 2023, respectively. (*Id.*). U.S. Patent Application No. 18/114,375 (the "'375 Application") was filed February 27, 2023, and issued on August 19, 2025 as U.S. Patent No. 12,390,157 (the "'157 Patent"). (ECF 24-10 at p. 84).

---

[4] "[I]n the context of [35 U.S.C. §] 111, a provisional application is a temporary, stand-in application that precedes the non-provisional application and does not lead to a conferral of rights on the patentee unless a patent issues from the subsequent non-provisional application." *In re Forest*, 134 F.4th 1198, 1203 (Fed. Cir. 2025).

Dullen is listed on these patents as the sole inventor and applicant. (*Id.*). These patents relate to the underlying software and data collection system and all reference their employ in the use of the PainTrace device.

*Dullen's Employment Agreements with BioTraceIT*

As noted, in 2014, Dullen commenced her employment with at Biographs. In late 2014, Biographs was restructured and a new entity, BioTraceIT, was formed. Effective January 1, 2015, Dullen entered into an employment agreement with BioTraceIT (the "2015 Employment Agreement").[5] (ECF 24-5 at pp. 2-10). Pursuant to the employment agreement, BioTraceIT agreed to employ Dullen from January 1, 2015 until December 31, 2018, with an automatic two-year renewal term subject to prior notice otherwise. (*Id.* at p. 2). The 2015 Employment Agreement contained a confidentiality provision and restrictive covenants against competition and the solicitation of customers and employees, (*id.* at pp. 4-7), as well as a termination provision, (*id.* at pp. 7-8). The 2015 Employment Agreement further provided that the restrictive covenants remained in force for one year after cessation of employment and applied to "any geographic area where [BioTraceIT] or any of its Affiliates conduct[ed] business." (*Id.* at p. 6).

In 2019, BioTraceIT and Dullen agreed to a new employment agreement (the "2019 Employment Agreement"). (ECF 24-8 at p. 2). The 2019 Employment Agreement mirrored many of the 2015 Employment Agreement provisions, including: the confidentiality provision; the restrictive covenants; and a termination provision. (*Id.* at pp. 4-8). The 2019 Employment Agreement contained additional clauses that acknowledged that Dullen had "full ownership and worldwide rights to all IP" previously retained, generated by, in relation to, or attributed to her. (*Id.* at pp. 8-9).

*Formation of Los Dud*

On January 26, 2015, Shore and Dullen formed Los Dud, Inc., ("Los Dud"), as a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania. (ECF 24 at ¶ 94; ECF 23-7 at p. 2). Pursuant to a shareholder agreement executed on May 15, 2017, (the "Los Dud Shareholder Agreement") (ECF 23-7 at p. 2 at p. 2, 10), Dullen and Shore own an equal number of shares in Los Dud and serve as Los Dud's only board members. (ECF 23-7 at pp. 2-3). A stated purpose in the Los Dud Shareholder Agreement for the formation of Los Dud was for Dullen and Shore "to have a corporate entity" through which "inventions discovered or made either individually or jointly by [them could] be assigned" and

---

[5] There appears to be two employment agreements that are "effective" January 1, 2015. Plaintiff offered an agreement signed only by Shore, which provides that the agreement was executed on December 1, 2014. (ECF 22-8 at p. 2). Dullen provided an agreement signed by her and Shore, which indicates that the 2015 Employment Agreement was executed on February 26, 2016 and effective January 1, 2015. (ECF 24-5 at pp. 2, 10). Since the agreement provided by Dullen is signed by both parties, this Court relies on the latter agreement.

they could "license or otherwise exploit such property[,]" including "inventions [that] may relate to the business BioTraceIT or otherwise." (*Id.* at p. 3).

At Shore's instruction, Zopf assigned the Burke Patent from Biographs to Los Dud on March 12, 2017, (ECF 24-9 at pp. 4-5; Tr. at 65:4-7; Tr. at 82:9-16), and assigned the '992 Provisional Application from Dullen and Shore to Los Dud on March 13, 2017, (ECF 22-9 at p. 2; Tr. at 65:4-7; Tr. at 82:9-16). Pursuant to a license agreement between BioTraceIT and Los Dud, executed May 15, 2017, Los Dud agreed to license to BioTraceIT patent rights to the Burke Patent (the "2017 Patent License Agreement"). (ECF 23-6 at p. 2).[6] (ECF 23-6 at p. 3).

*Dullen's Termination and Patent Contest*

On February 8, 2025, BioTraceIT's shareholders voted to remove Dullen as President, and, on February 10, 2025, BioTraceIT's Board of Directors terminated Dullen's employment, (ECF 22 at ¶ 61), when it discovered that she had claimed ownership of BioTraceIT's Canadian subsidiary. (ECF 7-1 at p. 3). BioTraceIT further alleges that, prior to her termination, Dullen downloaded over 26 gigabytes of data containing trade secrets and sent company documents containing confidential information to her personal email. (ECF 7-1 at p. 3; ECF 22 at ¶¶ 62-63).

On March 17, 2025, Dullen sought to revoke BioTraceIT's patent counsel's power of attorney over the '375 Application and assign the power of attorney to herself. (ECF 24-10 at p. 167). The United States Patent and Trademark Office (the "USPTO") accepted the revocation and assignment on April 23, 2025. (ECF 24-11 at p. 2). On May 5, 2025, Los Dud assigned the Burke Patent to BioTraceIT. (ECF 1-12). On June 10, 2025, Dullen again sought to revoke Zopf's power of attorney, this time for the '992 Provisional Application. (ECF 1-13 at p. 5). The USPTO rejected the revocation on June 12, 2025. (*Id.* at p. 4). Shore and Zopf attempted to apply for a power of attorney over the '375 Application on June 24, 2025, (ECF 24-11 at p. 4), but the USPTO rejected the application on June 26, 2025, (*id.* at p. 8). That same day, Shore and Zopf sought to assign the '992 Provisional Application, the '203 Patent, the '438 Patent, the '877 Patent, and the '375 Application to BioTraceIT. (ECF 24-1 at pp. 2-4).

As of the date of this Opinion, BioTraceIT has been assigned the Burke Patent and seeks a declaratory judgment confirming its ownership of the following identified patent applications and patents: the '992 Provisional Application; the '774 International Application; the '877 Patent; the '438 Patent; the '203 Patent; and the '375 Application, now issued as the '157 Patent (collectively, the "Contested Patents and Applications"). (ECF 1 at p. 2).

---

<sup>6</sup> The 2017 Patent License Agreement also refers to an unknown provisional patent filed December 2014: U.S. Provisional Patent No. 6,347,248. (ECF 23-6 at p. 3).

**LEGAL STANDARD**

Rule 65 governs the issuance of injunctions and restraining orders. Fed. R. Civ. P. 65. Injunctive relief is extraordinary in nature and available only in limited circumstances. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."). "Whether a plaintiff can get [a preliminary injunction] depends on whether (1) he is likely to succeed on the merits, (2) he will suffer irreparable harm without preliminary relief, (3) the balance of equities favors an injunction, and (4) an injunction is in the public interest." *Veterans Guardian VA Claim Consulting LLC v. Platkin*, 133 F.4th 213, 218 (3d Cir. 2025) (citing *Winter v. NRDC*, 555 U.S. 7, 20 (2008)).

In *Reilly v. City of Harrisburg*, the United States Court of Appeals for the Third Circuit (the "Third Circuit") clarified a movant's burden when seeking a preliminary injunction and held that a movant must first demonstrate "a better than negligible chance" of prevailing on the merits and that "it is more likely than not" that the movant will suffer irreparable harm in the absence of a preliminary injunction. 858 F.3d 173, 179 (3d Cir. 2017). If a movant meets these two gateway requirements, the court then "considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id*.

**DISCUSSION**

As noted, BioTraceIT moves for a preliminary injunction seeking to enjoin Dullen from: 1) taking further action related to the various identified patents and patent applications;[7] 2) using, disclosing, or misappropriating Plaintiff's alleged trade secrets; 3) violating the non-competition, non-solicitation, and confidentiality covenants in her employment agreements; 4) interfering with Plaintiff's business relationships; and 5) destroying, altering, concealing, or disposing of documents, data, or evidence. (ECF 7). BioTraceIT argues that injunctive relief is warranted because it is likely to succeed on the merits on its claims based on Defendant's — violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA"); breach of contract provisions assigning ownership of patents to BioTraceIT; breach of restrictive covenants within Dullen's employment agreement; breach of fiduciary duty; tortious interference with Plaintiff's contracts; and violation of Section 713 of the New York Business Corporation Law — and will suffer irreparable harm absent such relief. (*Id.*). Plaintiff also argues that Dullen owed a fiduciary duty to BioTraceIT as its Board Chair, President, and CEO and that Dullen breached those duties by, *inter alia*, failing to assign the Contested Patents and Applications to BioTraceIT. (*See* ECF 30 at pp. 15-16; ECF 7 at p. 6). Based on the evidence presented,[8] this Court finds that Plaintiff has demonstrate a better

---

[7]   The precluded actions include filing assignments, powers of attorney, communications with the USPTO, or taking any other actions that could affect the prosecution, issuance, maintenance, or enforcement of said patents and applications. (ECF 8 at p. 2).

[8]   In BioTraceIT's reply in further support of its motion, (ECF 30), BioTraceIT presents emails between Dullen and her attorneys found in Dullen's company computer. Dullen objected to the presentation of these emails arguing attorney-client privilege. This Court agrees that the emails are protected by attorney-client privilege. "The attorney-client privilege protects from disclosure confidential communications made between attorneys and clients for the purpose of obtaining or providing legal assistance to the client." *In re Grand Jury*, 705 F.3d 133, 151 (3d Cir. 2012). This Court applies Third Circuit precedent on attorney-client privilege:

> Communications are protected under the attorney-client privilege when: (1) legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the

> communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection may be waived.

*In re Grand Jury Proceeding Impounded,* 241 F.3d 308, 316 n.6 (3d Cir. 2001) (citation and alterations omitted). "'The burden of proving that the (attorney-client) privilege applies is placed upon the party asserting the privilege.'" *In re Grand Jury*, 603 F.2d 469, 474 (3d Cir. 1979) (citing *United States v. Landof*, 591 F.2d 36, 38 (9th Cir. 1978)).

"Waiver can occur by, *inter alia*, voluntarily disclosing otherwise privileged information to a third party." *Jordan v. Temple Univ. Health Sys.*, 2017 WL 11551387, at *1 n.1 (E.D. Pa. Aug. 9, 2017) (citing *Westinghouse Elec. Corp. v. Rep. of Phillipines*, 951 F.2d 1414, 1428-29 (3d Cir. 1991)). Although the Third Circuit has not yet addressed this issue, other federal courts have applied the four-factor test announced in *Asia Global* to determine whether an employee has waived the attorney-client privilege of personal communications transmitted, stored, or saved onto a company computer. *See, e.g.*, *Dombroski v. Gov. Mifflin Sch. Dist.*, 2012 WL 2501017, at *6 (E.D. Pa. June 29, 2012); *see also In re Reserve Fund Sec. & Derivative Litig.*, 275 F.R.D. 154, 159 n.9 (S.D.N.Y. 2011) (describing *Asia Global* as the "widely adopted" standard to be employed when determining whether emails transmitted over and maintained on a company server are privileged and listing cases in which test was applied).

In *Asia Global*, the court considered whether an employee's use of his company's email system to communicate with his personal attorney destroyed the privileged nature of the relevant emails. *In re Asia Global Crossing, Ltd.*, 322 B.R. 247, 251 (Bankr. S.D.N.Y. 2005). The court laid out four factors for courts to consider:

> (1) does the corporation maintain a policy banning personal or other objectionable use, (2) does the company monitor the use of the employee's computer or e-mail, (3) do third parties have a right of access to the computer or e-mails, and (4) did the corporation notify the employee, or was the employee aware, of the use and monitoring policies[.]

*Id.* at 257; *see also O'Connor v. Ortega*, 480 U.S. 709, 718 (1987) ("Given the great variety of work environments, . . . the question [of] whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis.").

Here, the emails between Dullen and her counsel are protected by the attorney-client privilege and there is no evidence showing Dullen's waiver of the privilege. In the April 2025 emails, Dullen was seeking legal advice from attorneys, with the subject line of the email related to the lawsuit by BioTraceIT against her in New York. (ECF 20-1 at pp. 1-6). In the emails from June 2025 to August 2025, Dullen was inquiring as to assignments made by Shore and Zopf from Dullen to herself, as well as issues related to the power of attorney related to the same. (*Id.* at p. 7-14). Dullen was simply seeking legal advice from her attorneys as to ongoing litigation and assignment of intellectual property rights. Finally, although Plaintiff does not argue that Dullen voluntarily waived her attorney-client privilege, it makes allegations suggesting such an argument. Specifically, Plaintiff states that Zopf found the emails when she searched Dullen's company email after Dullen's termination. (Tr. at 70:2-4). Because Plaintiff has not proffered evidence to satisfy any part of the *Asia Global* four-part test, this Court finds that Dullen did not waive her attorney-client privilege simply by using a company email that were accessed by Zopf. Because this Court finds that the disclosure violates the attorney-client privilege, the emails are not considered in this Court's analysis.

8

than negligible chance of prevailing on the merits and that it is more likely than not that Plaintiff will suffer irreparable harm in the absence of a preliminary injunction.

***Likelihood of Success on the Merits***

One of the two threshold inquiries is whether BioTraceIT, as the movant, has met its burden of demonstrating a likelihood of success on the merits of its claims. *See Reilly*, 858 F.3d at 179. As discussed, BioTraceIT advances several claims against Dullen. Though several claims are asserted, a court needs only find a movant likely to succeed on one claim to grant a preliminary injunction. *See Deluhery v. Unifiednames, Inc.*, 2007 WL 9789620, at *2 (D.N.J. 2007) (citing *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001); *see also Pa. Prof. Liability Joint Underwriting Assoc. v. Wolf*, 328 F. Supp. 400, 410 n. 2 (M.D. Pa. 2018).

To establish a likelihood of success on the merits, "the movant need only prove a '*prima facie* case,' not a 'certainty' [it will] win." *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017). The Third Circuit "do[es] not require that the right to a final decision after trial be 'wholly without doubt'; the movant need only show a 'reasonable probability' of success." *Id.* (quoting *Punnett v. Carter*, 621 F.2d 578, 583 (3d Cir. 1980)).

With regards to the breach of fiduciary duty claim,[9] "'[t]he elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the misconduct.'" *Wakill*

---

[9] In analyzing this fiduciary duty claim, this Court applies New York law. A federal court exercising federal question jurisdiction over a federal claim and supplemental jurisdiction over related state law claims applies the choice-of-law rules of the state of the forum." *I.M. Wilson, Inc. v. Otvetstvennostyou "GRICHKO"*, 500 F. Supp. 3d 380, 400 n.14 (E.D. Pa 2020) (citation omitted). However, "when parties agree upon the law to be applied, a choice of law analysis is unnecessary." *Atl. States Ins. Co. v. Copart, Inc.*, 609 F. Supp. 3d 379, 387 (E.D. Pa 2022). Given BioTraceIT's reliance on New York law in its arguments in the motion and made at the hearing, and Dullen's argument that New York law should apply to BioTraceIT's state law claims, (ECF 26 at p. 6 n.2), this Court finds consensus between the parties that New York law applies to BioTraceIT's state law claims.

*Medical Dev., LLC v. Catskill Orange Orthopedics, P.C.*, 178 A.D. 3d 987, 988-89 (N.Y. App. Div. 2019) (internal citations omitted).  It is undisputed that, as the President and Chief Executive Officer of BioTraceIT, Dullen owed it a fiduciary duty to the company.  *Calabrese Bakeries, Inc. v. Rockland Bakery, Inc.*, 102 A.D.3d 1033, 1038 (N.Y. App. Div. 2013) (quoting *Howard v Carr*, 222 A.D.2d 843, 845 (N.Y. App. Div. 1995)) ("The case law makes clear that 'officers and directors of a corporation stand in a fiduciary relationship to the corporation and owe their undivided and unqualified loyalty to the corporation[.]'").  Here, the parties dispute whether Dullen engaged in misconduct when she failed to assign the Contested Patents and Applications to BioTraceIT.

"An officer or director's fiduciary duty may include the obligation to assign a patent to the corporation if the officer or director invented the subject matter of the patent while employed by the corporation and the invention relates to the business of the corporation." *Gasser v. Infanti Int'l, Inc.*, 353 F. Supp. 2d 342, 352 (E.D. N.Y. 2005) (citing *Mechanical Plastic Corp. v. Thaw*, 197 U.S.P.Q. 651, 654 (N.Y. Sup. Ct. 1977)).  In *Thaw*, the court held that the president of a company had no claim to rights in a patent he co-invented as the device associated with the patent was:  1) developed completely at the expense of the company; 2) while he was employed by the company; 3) with use of the facilities and resources of the company; 4) with use of the company's patent lawyers; 5) on the company's time; and 6) pursuant to the express terms of his employment contract.  *Thaw*, 197 U.S.P.Q. at 653.

Similar to *Thaw*, it may be reasonably shown that Dullen owed a fiduciary duty to assign the Contested Patents and Applications to BioTraceIT, and that she violated that duty when she chose not to assign the Contested Patents and Applications to BioTraceIT.  Dullen admits via email that her employment with BioTraceIT was connected to "bring[ing] PainTrace to market."  (ECF

24-1 at p. 48). Dullen is a purported expert in biotechnology and devices associated therewith, and would, it appears, be aware of the types of software needed to bring such a device to market. (*Id.* at pp. 52-55). Upon Shore's invitation and offer, Dullen was employed to do just that, bring PainTrace to market. Aside from the Burke Patent, the Contested Patents and Applications in this case were developed and issued during Dullen's tenure as president and CEO of BioTraceIT. It is undisputed that the technology underlying those patents, which were developed during Dullen's tenure with BioTraceIT, were used in conjunction with the PainTrace device. Zopf, BioTraceIT's patent attorney, submitted the applications for all patents in this case and prosecuted all but the '375 Application to issuance. This Court finds that there is sufficient evidence upon which BioTraceIT's may prevail on establishing that Dullen is not the actual owner of the intellectual property at issue and her claim to ownership and attempt to use the same would be a breach of her fiduciary duty.

***Irreparable Harm***

The second gateway requirement to the injunctive relief Plaintiff seeks requires proving "a 'clear showing of immediate irreparable injury.'" *Middle E. Forum v. Reynolds-Barbounis*, 2021 WL 84054, at *5 (E.D. Pa. Jan. 8, 2021) (quoting *Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 358 (3d Cir. 1980)). The injury must constitute "potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994) (internal quotation marks and citation omitted). The preliminary injunction "must be the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). Additionally, "the risk of irreparable harm must not be speculative." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000). "[T]hough 'a purely economic injury, compensable in money, cannot satisfy the irreparable injury

requirement . . . an exception exists where the potential economic loss is so great as to threaten the existence of the movant's business.'" *Revel AC, Inc. v. IDEA Boardwalk LLC*, 802 F.3d 558, 572 (3d Cir. 2015) (quoting *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 255 (3d Cir. 2011)).

BioTraceIT argues that Dullen's actions "threaten abandonment, invalidation, and valuable loss of patent rights . . . , trade secret theft, and goodwill erosion," and that, absent this Court's intervention, Dullen could interfere with its other patents and numerous international applications. (*Id.* at p. 7-8). This Court agrees. BioTraceIT's primary technology, PainTrace, relies on the patents and patent applications over which Dullen claims ownership. Without ownership or license rights to the patents, BioTraceIT would be unable to commercialize PainTrace, thus threating its existence. Given BioTraceIT's substantial reliance on the Contested Patents and Applications, this Court finds that Plaintiff would be irreparably harmed without the issuance of a preliminary injunction. Dullen may argue that the likelihood of irreparable harm does not exist because on May 5, 2025, Los Dud assigned the Burke Patent to BioTraceIT. This argument fails since the irreparable harm includes the other patents Dullen claims ownership.

*Balance of Hardships and Public Interest*

Having found that BioTraceIT satisfies the two gateway factors, this Court must undertake a balancing of the hardships to the respective parties and determine whether granting the preliminary relief is in the public interest. BioTraceIT avers that its hardship constitutes eroded investor confidence and market loss and offered the testimony of various investors at the TRO hearing. (ECF 30 at p. 18). BioTraceIT argues that three million dollars in funding from approximately twenty-five shareholders would be lost if the injunction was not implemented. (*Id.* at 19). In response, Dullen argues that "the weakness of the Company's position on the merits of its claims necessitate that the balance of equities favors Dullen . . . ." (ECF 26 at p. 25). In rebuttal,

BioTraceIT contends that, because Dullen's harm is self-inflicted, she has no legitimate claims of how she might be harmed by the injunction.  (ECF 7-1 at 9).

In balancing the equities, "[t]he question is whether, and to what 'extent[,] . . . the defendants will suffer irreparable harm if the preliminary injunction is issued.'"  *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 727 (3d Cir. 2004) (second alteration and first omission in original) (quoting *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990)).  Depriving BioTraceIT of injunctive relief threatens a worse harm than its issuance does to Dullen because BioTraceIT is currently restricted from using inventions derivative of its primary product.  Ultimately, if it is found Dullen owns the patents, a reasonable licensing fee and other remedies may be had.  Therefore, this Court finds the hardship to BioTraceIT, which continues to be left in uncertainty regarding the ownership rights of the patents and its restriction from using and promoting its technology, outweighs any hardship to Dullen.

BioTraceIT further argues that public interest factors, such as "[p]rotecting [intellectual property], enforcing contracts, and preventing trade secret theft serve the public" factors, weigh in favor of granting it relief.  (ECF 7-1 at pp. 9-10).  In response, Dullen argues that no legitimate public purpose is served:  "by denying a patent owner the use of her personal property[;]" "in having a terminated employee be locked in step with [Plaintiff] that fired her and removed her titles where there are no enforceable restrictive covenants[;]" and "having contracts drafted and signed by an attorney voided at the behest of the attorney that negotiated, drafted and signed those same contract[.]" (ECF 26 at p. 26).

"To determine where the public interest lies, a court should weigh the 'advantages and disadvantages' to the public of 'employing the extraordinary remedy of injunction over the other available methods of enforcement.'"  *TD Bank N.A. v. Hill*, 928 F.3d 259, 284 (3d Cir. 2019)

(quoting *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 498, 121 S. Ct. 1711, 149 L. Ed. 2d 722 (2001)).  When the reach of an injunction is narrow, limited only to the parties, and has no impact on nonparties, the public interest will be at most a neutral factor in the analysis rather than one that favors granting or denying preliminary injunction; if, however, the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction.  *See Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009).  Where the movant "demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor" the movant.  *AT&T v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994).  Here, the potential loss of a product that could benefit persons and animals globally in the detection of pain implicates the public interest.

**CONCLUSION**

     For the reasons set forth, the motion for a preliminary injunction is granted.  *See Reilly*, 858 F.3d 179 (3d Cir. 2017).  An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.